AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED

MAY 09 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple iPhone X Model: MQA52LL/A<br>IMEI: 35 671908 187270 0 | ) ) ) ) ) )  Case No. **18MJ2286** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 952/960 | Importation of a controlled substance |

The application is based on these facts:
See Affidavit of Homeland Security Investigations Special Agent Michael Hensley, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael Hensley, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/9/18

_____
*Judge's signature*

City and state: San Diego, CA

Bernard G. Skomal, Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Michael Hensley, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search an Apple I-Phone X Model MQA52LL/A, Serial No.: C39VD43DJCLF, IMEI: 35 671908 187270 0 (hereinafter **"Target Device"**), described in Attachment A (incorporated herein by reference), which was seized from Melissa CALDERON-Morales on April 10, 2018, incident to her arrest for importation of fentanyl and cocaine at the Otay Mesa Port of Entry (POE) and which is currently held as evidence at the Customs and Border Protection Fines, Penalties and Forfeitures Evidence Vault, 9495 Customhouse Plaza, San Diego, California 92154.

2. I seek authority to search the **Target Device** for evidence from January 1, 2018, through April 10, 2018 of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachments B (incorporated herein by reference.)

3. The information contained in this affidavit is based upon my experience and training, and in consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximate.

### EXPERIENCE AND TRAINING

4. I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been so employed since December 11, 2016. Prior to being

a Special Agent, I have approximately two years of experience as an Immigration Officer under the Fraud Detection and National Security (FDNS) division of the United States Citizenship and Immigration Services (USCIS). I also have over six (6) years of law enforcement experience as a United States Border Patrol (USBP) Agent. As a Border Patrol Agent, I was assigned to conduct administrative and criminal investigations to identify potential threats towards national security and public safety. I conducted undercover operations in a plain clothes capacity investigating human and narcotic smuggling trends for over two years. In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

5. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code. I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 USC §§ 952 and 960, Importation of a Controlled Substance. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

7. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can

3

and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to indicate efforts to import fentanyl and cocaine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl and cocaine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and cocaine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    d. tending to identify travel to or presence at locations involved in the importation of fentanyl and cocaine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On April 10, 2018, at approximately 2:40 p.m., Melissa CALDERON-Morales applied for admission into the United States from Mexico through the Otay Mesa Port of Entry (POE). CALDERON-Morales was the driver, registered owner, and the sole occupant of a 2006 blue Honda Civic bearing California license plate 5TUD599 ("the vehicle"). A Customs and Border Protection Officer (CBPO) encountered CALDERON-Morales at the primary inspection. CALDERON-Morales stated she was going to San Diego, CA, and gave a negative customs declaration. The CBPO conducted system queries and received a computer-generated alert on CALDERON-Morales. The CBPO subsequently referred CALDERON-Morales to secondary inspection.

10. At secondary inspection, a CBPO and his assigned Narcotics and Human Detection Dog (NHDD) inspected the vehicle and the NHDD alerted to the dash board area. A Z-Portal x-ray scan of the vehicle showed anomalies in the dash area of the vehicle. The vehicle was referred to secondary inspection for further processing. A CBPO removed the stereo from the dash area of the vehicle and discovered several packages concealed in the dash board area of the vehicle. The CBPO subsequently removed the airbag cover from the dash and discovered additional packages.

11. A total of sixteen (16) packages were removed from the Honda Civic. A CBPO randomly selected and probed a sample from each package. Ten (10) packages field-tested positive for the indication of fentanyl, a Schedule II controlled substance. The total weight of the fentanyl packages was approximately 10.96 kilograms (24.16 pounds). Six (6) packages field-tested positive for the indication of cocaine, a Schedule II controlled substance. The total weight of the cocaine packages was approximately 6.80 kilograms (14.99 pounds).

12. During her post-arrest interview, CALDERON-Morales claimed she didn't know the narcotics were found in the dash board area of her vehicle. She stated that she took her vehicle to Tijuana to a mechanic to fix a bumper. She also claimed that she had problems with the vehicle's air conditioning. CALDERON-Morales stated that she drove to the Costco parking lot in Tijuana to meet with an individual named "Javier" who reached out to a mechanic. CALDERON-Morales met the mechanic at a plaza and gave him the keys to the vehicle. She waited approximately two hours to get her vehicle back. CALDERON-Morales claimed she paid Javier half of the money for the service ($50) and would pay an additional $50. CALDERON-Morales claimed she knows Javier through Kenia, and that she met Kenia through her cousin, Jasmine Osuna.

13. During her post-arrest interview, CALDERON-Morales positively identified the **Target Device** as belonging to her. According to CBP Officers, the phone was discovered in the center console of the vehicle when CALDERON-Morales was arrested. The cell phone was seized by HSI Special Agents and stored at the Customs and Border Protection Vault.[1]

14. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the **Target Device** was used to coordinate the importation of fentanyl and cocaine into the United States. In addition, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** may identify the persons involved in narcotics trafficking activities, including CALDERON-Morales. Furthermore, it is likely the **Target Device** may contain incriminating information pertaining to the smuggling event. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts

---

[1] After the post-arrest interview, HSI Special Agents reviewed the **Target Device** pursuant to their border search authority. The information obtained from the **Target Device** during the border search is not being relied on in this search warrant application, and is therefore not included in the probable cause statement.

and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of CALDERON-Morales, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, deleted messages/data, pictures and other digital information are stored in the memory of the **Target Device**.

15. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience, this requires planning and coordination in the weeks and often months prior to the event. This planning often includes coordination on crossing the border to develop a crossing history or pattern.

16. A review of CALDERON-Morales' crossing records shows crossings in the 2006 Honda Civic vehicle that she used to conceal the fentanyl and cocaine. According to her crossing records, CALDERON-Morales had over 35 crossings in the Honda Civic. Specifically, she had 10 crossings in that vehicle in 2018 (on January 21, January 23, March 13, March 17, March 19, March 22, March 23, April 2, April 6, and April 7) prior to her arrest on April 10, 2018. As noted previously, the fentanyl and cocaine was purposely concealed within the dash board area of the vehicle. Given this, I respectfully request permission to search the Target Device for items listed in Attachments B beginning on January 1, 2018, up to and including April 10, 2018.

## **METHODOLOGY**

17. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy

1 all of the data contained on the device. For that reason, the device may only be powered in
2 a secure environment or, if possible, started in "flight mode" which disables access to the
3 network. Unlike typical computers, many cellular/mobile telephones do not have hard
4 drives or hard drive equivalents and store information in volatile memory within the device
5 or in memory cards inserted into the device. Current technology provides some solutions
6 for acquiring some of the data stored in some cellular/mobile telephone models using
7 forensic hardware and software. Even if some of the stored information on the device may
8 be acquired forensically, not all of the data subject to seizure may be so acquired. For
9 devices that are not subject to forensic data acquisition or that have potentially relevant data
10 stored that is not subject to such acquisition, the examiner must inspect the device manually
11 and record the process and the results using digital photography. This process is time and
12 labor intensive and may take weeks or longer.

13     18. Following the issuance of this warrant, I will collect the subject cellular/mobile
14 telephones and subject them to analysis. All forensic analysis of the data contained within
15 the telephones and memory cards will employ search protocols directed exclusively to the
16 identification and extraction of data within the scope of this warrant.

17     19. Based on the foregoing, identifying and extracting data subject to seizure
18 pursuant to this warrant may require a range of data analysis techniques, including manual
19 review, and, consequently, may take weeks or months. The personnel conducting the
20 identification and extraction of data will complete the analysis within ninety (90) days,
21 absent further application to this court.

## CONCLUSION

23     20. Based on all of the facts and circumstances described above, there is probable
24 cause to conclude that the **Target Device** was used to facilitate violations of Title 21, United
25 States Code, Section(s) 952 and 960.

26     21. Because the **Target Device** was seized during the investigation of
27 CALDERON-Morales' smuggling activities and have been securely stored, there is
28 probable cause to believe that evidence of illegal activities committed by CALDERON-

Morales continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from January 1, 2018, up to and including April 10, 2018.

22. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A and the seizure of items listed in Attachments B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Michael Hensley
Special Agent

Subscribed and sworn to me before this ___9___ day of May, 2018.

_____
United States Magistrate Judge

9

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>One Apple I-Phone X
>Model: MQA52LL/A
>IMEI: 35 671908 187270 0
>Serial: C39VD43DJCLF
>ICCID: 8901260335916196203
>MEID: 35671908197270
>
>**(Target Device)**

**Target Device** is currently held as evidence at the Customs and Border Protection Fines, Penalties and Forfeitures Evidence Vault, 9495 Customhouse Plaza, San Diego, California 92154.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2018, up to and including April 10, 2018.

a. tending to indicate efforts to import fentanyl and cocaine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl and cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of fentanyl and cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.